**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| CHART INC.,<br>2200 Airport Industrial Drive<br>Ball Ground, Georgia 30107,<br><br>            Plaintiff,<br><br>    v.<br><br>ALLCRYO, INC.,<br>21500 Sharp Road<br>Montgomery, Texas 77356,<br><br>            Defendant. | CASE NO.<br><br>JUDGE<br><br><br><br>**COMPLAINT**<br><br>**(JURY DEMAND ENDORSED<br>HEREON)** |

Plaintiff Chart Inc. ("Chart"), for its Complaint against Defendant Allcryo, Inc. ("Allcryo"), states as set forth below.

## I.    PARTIES, JURISDICTION & VENUE

1. Chart is a Delaware corporation with its principal place of business at 2200 Airport Industrial Drive, Suite 100, Ball Ground, Georgia 30107.

2. Allcryo is a Texas corporation with its principal place of business at 21500 Sharp Road, Montgomery, Texas 77356, and a registered office at 11230 F.M. 830, Willis, Texas 77318.

3. Subject matter jurisdiction is proper in this Court in accordance with 18 U.S.C. § 1332 because Chart and Allcryo are citizens of different States and the amount in controversy exceeds $75,000.

4. Allcryo is subject to the jurisdiction of this Court, and venue is proper in this Court, because the contract at issue contains a forum-selection clause where each party "irrevocably consent[ed] to the exclusive jurisdiction of the state and Federal courts located in

- 2 -

Franklin County, Ohio, in any action arising out of or relating to this Agreement and waive[d] any other venue to which it may be entitled by domicile or otherwise."

5. All conditions precedent to the maintenance of this civil action have occurred or have been performed, satisfied, waived or otherwise excused.

## II. FACTUAL ALLEGATIONS

6. Worthington Cryogenics, LLC and Allcryo entered into a Distribution Agreement dated January 31, 2020, for the purposes of promoting, distributing and selling certain cryogenic storage products known as microbulk tanks in the United States (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

7. In the fall of 2020, a company called IC Biomedical US, LLC ("ICB") purchased certain assets from Worthington Cryogenics, including the assets relevant to the Agreement and the Agreement itself. In connection with that transaction, Worthington Cryogenics assigned the Agreement to ICB.

8. On November 2, 2020, shortly after the ICB-Worthington transaction, Chart bought certain assets from ICB, including the assets relevant to the Agreement and the Agreement itself. In connection with that transaction, ICB assigned the Agreement to Chart. As a result, Chart is the successor-in-interest to Worthington Cryogenics and ICB with respect to the Agreement.

9. The Agreement contained consignment terms that allowed Worthington/ICB/Chart to ship microbulk tanks to Allcryo to be held on consignment by Allcryo for resale. When Allcryo would sell one of the consignment tanks, Worthington/ICB/Chart would then invoice Allcryo for that tank. The consignment terms also provided, "Upon termination of this Agreement for any reason [Allcryo] shall within twenty-four (24) hours

following such effective date of termination deliver to [Chart] at [Chart's] facility of origin, any Products and Consigned Inventory previously consigned but not purchased and paid for in full."

10. On November 2, 2020—90 days prior to the expiration of the current term of the Agreement—Chart gave Allcryo timely notice of non-renewal of the Agreement pursuant to Section 12 of the Agreement. Accordingly, the Agreement did not automatically renew at the end of the current term, and the Agreement expired on February 1, 2021.

11. On February 8, 2021, Chart emailed Allcryo to inquire about certain consignment microbulk tanks with the national board numbers 92, 108, 110, 118, 121, and 151 (the "Tanks"). Chart asked Allcryo to confirm whether it still had the Tanks, or whether it had sold them. Allcryo did not respond to that email. Allcryo has not returned the Tanks to Chart. Upon information and belief, Allcryo has sold the Tanks to third-party customers, but it has not paid Chart for the Tanks.

12. On February 22, 2021, having not received a response from Allcryo or the return of the Tanks, Chart invoiced Allcryo in the amount of $157,042 for the Tanks. A true and correct copy of the invoice for the Tanks is attached hereto as **Exhibit B**.

13. On February 8, 2022, Chart emailed Allcryo to inquire about the status of payment of the invoice for the Tanks. Chart also inquired about the status of payment related to invoice numbers 2934348 and 2934349 dated November 11, 2020. Allcryo short-paid those invoices in the amount of $1,268, unilaterally choosing to pay the stainless steel surcharge for July 2020 instead of the invoiced October 2020 stainless steel surcharge. True and correct copies of invoice numbers 2934348 and 2934349 showing Allcryo's unilateral reductions are attached hereto as **Exhibit C**.

- 4 -

14. Allcryo responded to the February 8, 2022 email and refused to pay the invoices, stating it did "not feel compelled to offer any compensation to Chart."

15. On February 11, 2022, Chart again wrote to Allcryo, reiterating its demand for payment of the total outstanding unpaid invoices in the amount of $158,310.  A true and correct copy of this February 11, 2022 letter is attached hereto as **Exhibit D**.  Allcryo did not respond to this letter.

16. To date, Allcryo has not paid the outstanding amount of $158,310 owed under the Agreement.

### III.  CAUSES OF ACTION

#### COUNT I:  BREACH OF CONTRACT

17. Chart incorporates by reference the allegations contained in paragraphs 1 through 16 of this Complaint as if fully rewritten here.

18. Under the Agreement, Allcryo agreed to pay for all products purchased within sixty (60) days of invoice; to pay stainless steel surcharges adjusted monthly; and, within 24 hours following the effective date of termination of the Agreement, to deliver to Chart any products previously consigned but not purchased and paid for in full.

19. Chart invoiced Allcryo in the amount of $158,310 for the unpaid portion of stainless steel surcharges and for Tanks that were previously consigned to Allcryo and that Allcryo had not returned or paid for in full.  Under the terms of the Agreement, Allcryo is obligated to pay Chart $158,310.

20. Alcryo has breached the Agreement with Chart by failing to pay Chart the invoiced amount of $158,310 for the Tanks and stainless steel surcharges.

21. Chart has been damaged as a result of the breach in the amount of $158,310.

- 4 -

- 5 -

**COUNT II:  CONVERSION**

22. Chart incorporates by reference the allegations contained in paragraphs 1 through 21 of this Complaint as if fully rewritten here.

23. As a result of the November 2, 2020 ICB-Chart transaction, Chart owns the Tanks that were provided to Allcryo on consignment per the Agreement.

24. Per the terms of the Agreement, Allcryo was required to deliver to Chart, within 24 hours following the effective of termination of the Agreement, any tanks previously consigned but not purchased and paid for in full.  This included the Tanks, which had previously been consigned but not purchased and paid for in full.

25. Allcryo has not delivered the Tanks to Chart.

26. Upon information and belief, Allcryo has sold some or all of the Tanks to third-party customers, but it has refused to pay Chart for the Tanks.

27. Allcryo has unlawfully converted Chart's property rights in the Tanks by its wrongful acts of failing to deliver the Tanks to Chart per the terms of the Agreement and failing to pay Chart for any Tanks that it has sold.

29. Chart has been damaged as a result of the conversion in the amount of $157,042.

**COUNT III:  UNJUST ENRICHMENT (In the Alternative)**

30. Chart incorporates by reference the allegations contained in paragraphs 1 through 29 of this Complaint as if fully rewritten here.

31. As a result of the November 2, 2020 ICB-Chart transaction, Chart owns the products that were provided to Allcryo, including the Tanks.

32. Chart conferred a benefit upon Allcryo by providing products to Allcryo.

33. Allcryo knew of the benefit conferred by Chart by providing these products to Allcryo.

34. Under the circumstances, it would be unjust to allow Allcryo to retain the benefit of the products, including the Tanks, without payment to Chart in the amount of $158,310.

## IV. PRAYER FOR RELIEF

WHEREFORE, Chart prays this Court for the following relief:

1. Compensatory damages in the principal amount of no less than $158,310, plus interest, costs, expenses, and attorney's fees; and

2. Such other or further relief as this Court deems just and equitable.

Respectfully submitted,

s/ *Anthony F. Stringer*
Anthony F. Stringer (0071691)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
astringer@calfee.com

*Attorney for Chart Inc.*

- 7 -

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Chart demands a trial by jury of all issues triable of right by jury.

*s/ Anthony F. Stringer*
ANTHONY F. STRINGER (0071691)

*Attorney for Plaintiff, Chart Inc.*
